IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FRANK ANTHONY BERNAL,

      Plaintiff,

v.                                                 Civ. No. 16-1365 JAP/GBW

NANCY BERRYHILL, Acting
Commissioner of the Social
Security Administration,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before the Court on Plaintiff's Motion to Remand the Social Security Agency ("SSA") decision to deny Plaintiff Supplemental Security Income ("SSI"). *Doc. 25*. For the reasons explained below, I recommend denying Plaintiff's motion and affirming the judgment of the SSA.

### I. PROCEDURAL HISTORY

On February 6, 2013, Plaintiff filed applications for SSI and Social Security Disability Insurance Benefits ("SSDI"), alleging a disability onset date of June 1, 1998. Administrative Record ("AR") at 74, 80, 204. Plaintiff alleged that he had a disability resulting from testicular cancer and head injury. AR at 82, 105. The claims were initially denied on December 18, 2013, and upon reconsideration on April 11, 2014. AR at 73-113. Thereafter, Plaintiff filed a written request for a hearing on June 3, 2014. AR

at 134-35.  An Administrative Law Judge ("ALJ") held a hearing on October 19, 2015.  AR at 34-70.  During the hearing on his SSI and SSDI applications, Plaintiff amended his disability onset date to February 6, 2013, which post-dates his date last insured in 2001.  AR at 35-36.  Accordingly, Plaintiff voluntarily withdrew his request for a hearing on his SSDI application, resulting in the dismissal of that application.  AR at 36, 13.  Therefore, this appeal concerns Plaintiff's SSI application only.

On December 1, 2015, the ALJ issued an unfavorable decision on Plaintiff's SSI application, concluding that Plaintiff was not disabled.  AR at 13-27.  Plaintiff appealed the denial of his application to the Appeals Council, which declined review on November 7, 2016.  AR at 1-7.  Plaintiff filed suit in this Court on December 15, 2016, seeking review of the ALJ's decision.  *Doc. 1*.

**II.    STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991).  "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotations omitted).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

2

*Casias*, 933 F.3d at 800. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

### III. PARTIES' POSITIONS

Plaintiff asserts that the ALJ committed reversible error on the grounds that the ALJ (1) improperly determined that Plaintiff's borderline intellectual impairment does not meet or medically equal Listing 12.05C, for intellectual disability; (2) failed to analyze whether Plaintiff's borderline intellectual impairment met Listing 12.02, for neurocognitive disorders; (3) improperly afforded only some weight to the medical opinion of consultative psychological examiner Michael Emery, Ph.D.; and (4) did not comport with proper legal standards in step five of the sequential disability analysis by failing to resolve inconsistencies in the testimony of the vocational expert ("VE"). *See doc. 25 at 5-17; doc. 28*.

Defendant argues that there was no reversible error, because (1) substantial evidence supported the ALJ's finding that Plaintiff did not have a disabling listing-level

mental impairment, (2) the ALJ provided proper reasons for discounting Dr. Emery's opinion, and (3) the ALJ comported with the applicable legal standards when performing step five of her disability analysis, because the VE's testimony contained no inconsistencies. *See doc. 27* at 5-13. Ultimately, I recommend finding that the ALJ did not commit reversible error, and that the opinion should be affirmed.

IV. **ALJ EVALUATION**

   A. **Legal Standard**

For purposes of SSI benefits, an individual is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 416.920. If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id*. § 416.920(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity;" (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 416.920(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d

4

1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). A Plaintiff's RFC is "the most [he] can still do despite [physical and mental] limitations." *Id*. § 416.945(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling 82-62 (1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

**B. The ALJ's Decision**

On December 1, 2015, the ALJ issued a decision denying Plaintiff's application for SSI benefits. *See* AR at 13-27. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged

in substantial gainful activity since February 6, 2013, the application date and alleged disability onset date. AR at 15. At step two, the ALJ determined that Plaintiff had the following severe impairments: arthritis of the right knee, borderline intellectual impairment, depression, and anxiety disorder. AR at 16. At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity" of one of the listed impairments. AR at 17.

At step four, the ALJ determined that Plaintiff has an RFC to perform light work, with certain limitations. AR at 19. Specifically, the ALJ determined that Plaintiff can:

> lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently. The claimant is able to occasionally kneel, crawl, crouch, and squat. The claimant is limited to performing simple, routine, and repetitive tasks. The claimant can meet end of day goals, but is unable to perform at a production pace. The claimant is limited to occasional contact with supervisors and co-workers and incidental contact with the public. The claimant is limited to making simple, work-related decisions in a workplace with few changes in a routine work setting. The claimant is limited to communicating simple information and understanding simple, oral instructions.

AR at 19-20.

Also at step four, the ALJ found that Plaintiff is unable to perform any past relevant work. AR at 25. However, at step five, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy, including (1) housekeeper (DICOT 323.687-014, 1991 WL 672783), (2) garment sorter (DICOT 222.687-014, 1991 WL 672131), and (3) presser (DICOT 363.685-022, 1991 WL 673022). AR at 27. Consequently, the ALJ determined that Plaintiff was not disabled. *Id.*

## V. ANALYSIS

### A. The ALJ properly found that Plaintiff's impairment did not meet or medically equal Listing 12.05C at step three of her disability analysis.

Plaintiff asserts that the ALJ erred at step three when finding that Plaintiff's intellectual impairment did not meet or medically equal Listing 12.05C (Intellectual Disability). *Doc. 25* at 8-10, *doc. 28* at 1-3. For the following reasons, I recommend that the Court reject Plaintiff's argument and find that the ALJ reasonably concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled Listing 12.05C.

The "listings" at issue here are a list of particular impairments that the SSA has compiled to represent those conditions "severe enough to prevent a person from doing gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 416.925(a). As a result, a showing that Plaintiff's conditions are equivalent to one or more of these listings requires an automatic finding of disability at step three. 20 C.F.R. § 416.920(a)(4)(iii); *see also Sullivan v. Zebley*, 493 U.S. 521, 534 (1990). In order to make such a showing, Plaintiff has the burden to prove that his impairment meets "*all* of the specified medical criteria" for the listing. *Id.* at 530. Listing 12.05C (Intellectual Disability) has two specified medical criteria. First, as explained in the capsule definition of "intellectual disability," the individual must have significantly sub-average general intellectual functioning with deficits in adaptive functioning that initially

7

manifested before age 22. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 (2015).[1] Second, a qualifying individual under Paragraph C of the Listing must have a valid verbal, performance, or full scale IQ score of 60 through 70 with a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Id*.

The ALJ concluded that Plaintiff failed to prove that his impairments met Listing 12.05C, because he did not prove that he met the first prong. AR at 19. Although the ALJ acknowledged that Plaintiff had received a verbal score of 70 on an IQ test, she noted that Plaintiff was 46 years old when Dr. Emery conducted this test in November 2014. *Id*. Therefore, as she explained, there is no evidence of record demonstrating that Plaintiff's sub-average intellectual functioning manifested before age 22, other than Plaintiff's unsubstantiated claim that he received special education in school. *Id*. Given the wide range of issues which can precipitate "special education," this unconfirmed testimony was insufficient to meet Plaintiff's burden at step three to show that his impairment met the criteria of Listing 12.05C.

The ALJ's uncertainty regarding the period of development of Plaintiff's sub-average intellectual functioning was exacerbated by the facts that Plaintiff, after age 22, suffered a serious head injury after being struck by a truck in 1998, and that he has

---

[1] The Listings are frequently updated, and the most recent version took effect August 22, 2017. This citation properly refers to the version in effect at the time of the ALJ's decision on December 1, 2015. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 n.5 (10th Cir. 2012).

persistently abused drugs. *Id.* In support of this concern, the ALJ noted that Dr. Emery, after performing the November 2014 IQ test, determined that "it is not possible to sort out whether [the score of 70] is native intelligence . . . or a result of the head injury or both. There are no records." AR at 19, 461.

Plaintiff contends that the facts that he suffered a head injury and engaged in drug use after 22, factors that could worsen his intellectual functioning, do not prove that he did not have sub-average intelligence before age 22. *Doc. 25* at 9; *doc. 28* at 3. In so arguing, Plaintiff misstates his burden. The ALJ could not presume Plaintiff's deficits in adaptive functioning developed prior to age 22 merely because they existed at age 46. Rather, Plaintiff was required to prove the manifestation of such impairment prior to age 22. He failed to do so. As a result, because the Plaintiff failed to meet *his* burden to prove that he met the criteria required by 12.05C, the ALJ properly found that Plaintiff's impairment did not meet the Listing.

Plaintiff additionally argues that the ALJ erred by failing to analyze whether Plaintiff's impairments medically equaled Listing 12.05C. *Doc. 25* at 9-10; *doc. 28* at 2-3. The ALJ did not err, because in order for impairment to medically *equal* a listed impairment, "it must first be shown that the capsule definition of that impairment is satisfied," requiring a showing of significantly sub- average general intellectual

9

functioning manifested before age 22.[2] *See* POMS DI 24515.056(B)(1), (D)(1)(c); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 (2015). Again, Plaintiff did not prove that his impairment manifested before age 22. Thus, Plaintiff's condition did not medically equal Listing 12.05C. As a result, the ALJ's failure to analyze whether Plaintiff's condition medically equaled Listing 12.05C constitutes harmless error. As a result, the Court should reject Plaintiff's argument on this point.

### B. The ALJ's failure to discuss Listing 12.02 and its potential applicability to Plaintiff does not constitute reversible error.

Plaintiff next argues that the ALJ erred by failing to consider whether Plaintiff met Listing 12.02. *Doc. 25* at 10-11; *doc. 28* at 3-4. Specifically, Plaintiff contends that, since the ALJ concluded Plaintiff did not meet Listing 12.05C due to Plaintiff's failure to show that his deficits in adaptive functioning developed prior to age 22, the ALJ was required to consider whether Plaintiff met the criteria of Paragraphs A and B of Listing 12.02 (Organic Mental Disorders),[3] which deals with "[p]sychological or behavioral

---

[2] The SSA provides that, in cases of borderline intellectual functioning where the claimant's conditions may not "meet" Listing 12.05C, the claimant can show that their condition medically equals Listing 12.05C when claimant's valid IQ scores range between 70 and 75 in prong two of the analysis, rather than between 60 and 70, as required to "meet" Listing 12.05C. POMS DI 24515.056 (D)(1)(c).

[3] Plaintiff refers to this Listing as "Neurocognitive Disorders," which is the current title of Listing 12.02. *Doc. 25* at 10. As already noted, the most recent version of the Listings became effective August 22, 2017. Plaintiff's briefing refers to the title and accompanying criteria of Listing 12.02 that are contained in that most recent version, which differ from the title and accompanying criteria contained in the version in effect at the time of the ALJ's decision. *See id.* at 10-11; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02 (Aug. 22, 2017). The Court must apply the criteria of the governing provision that was in effect on December 1, 2015, when the ALJ issued her unfavorable decision. *See Chapo*, 682 F.3d at 1291 n.5. Accordingly, the undersigned discusses only those criteria from the "Organic Mental Disorders" Listing that were effective between August 12, 2015 and May 23, 2016. Notably, despite the differences in the

10

abnormalities associated with a dysfunction of the brain" where certain medical evidence demonstrates "the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities." *Id.*; 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02 (Aug. 12, 2015). To qualify under those paragraphs, a claimant must first demonstrate that he suffers from "a loss of specific cognitive abilities or affective changes" under Paragraph A. *Id.* § 12.02A. Paragraph A also requires the medically documented persistence of at least one of the following: (1) disorientation to time and place; (2) memory impairment; (3) perceptual or thinking disturbances; (4) change in personality; (5) disturbance in mood; (6) emotional lability and impulse control impairment; or (7) loss of measured intellectual ability of at least 15 IQ points from premorbid levels or overall impairment index clearly within the severely impaired range. *Id.* Further, under Paragraph B, a claimant must show that the criteria met under Paragraph A have resulted in at least two of the following: (1) marked restriction in activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Id.* § 12.02B.

Although at first glance, Listing 12.05 and Listing 12.02 may seem related, they are not as closely linked as Plaintiff contends. Rather, Listing 12.02 considers seven

---

titles and some of the criteria between the 2015 and 2017 versions of Listing 12.02, application of the current version would not dispositively alter my analysis.

11

entirely different specified medical criteria than those considered in Listing 12.05C. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.02A(1)-(7), 12.05C.

Most importantly, the ALJ was not required to consider Listing 12.02, because the ALJ should "'be entitled to rely on the claimant's counsel to structure the present claimant's case in a way that the claimant's claims are adequately explored,' and the ALJ 'may ordinarily require counsel to identify the issue or issues requiring further development.'" *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997)). Plaintiff was represented by counsel in the proceedings before the ALJ, and counsel did not raise Listing 12.02 as a basis for a finding of disability before the ALJ. However, Plaintiff argues that, because non-examining psychologist Dr. Renate Wewerka mentions the listing in her analysis, the ALJ should have performed a 12.02 Listing analysis in her opinion. *Doc. 28* at 3. It is not the ALJ's responsibility to adopt counsel's role by crafting counsel's arguments for them. *See Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) ("the ALJ is not required to act as the claimant's advocate."). Plaintiff had the burden of presenting evidence that established that his impairments met or equaled the listing. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). His counsel did not so much as mention Listing 12.02. As such, the ALJ committed no error by failing to analyze the applicability of Listing 12.02 in her opinion.

However, even if the ALJ were required to consider Listing 12.02, her failure to do so constitutes harmless error, because although the ALJ concluded Plaintiff failed to prove that his sub-average intellectual functioning developed prior to age 22, substantial evidence similarly indicates that he failed to prove that his functioning had declined over time. He simply provided no records providing clarity on the matter. AR at 461. Neither determination can be unmistakably made, nor is it the ALJ's role to speculate. Furthermore, in her opinion, the ALJ ruled out the applicability of Listings 12.04, 12.05, and 12.06, which share some of the exact criteria needed to satisfy Listing 12.02. Specifically, as noted above, to qualify as disabled under Listing 12.02, a claimant is required to meet the Paragraph B criteria. The Paragraph B criteria of Listing 12.02 are identical to the Paragraph B criteria of Listings 12.04 and 12.06, and to the Paragraph D criteria of Listing 12.05, all of which the ALJ considered and explicitly found were not met. *See* AR at 17-18; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.02B, 12.04B, 12.05D, 12.06B. The ALJ thoroughly discussed the evidence of record pertaining to these criteria, and ultimately concluded that "[b]ecause [Plaintiff's] mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria [of Listings 12.04 and 12.06] ('paragraph D' criteria of listing 12.05) are not satisfied." AR at 18. As such, had the ALJ analyzed the applicability of Listing 12.02, she would have similarly concluded that Plaintiff's impairment did not meet or medically equal that

13

listing. In consideration of the foregoing, the Court should reject Plaintiff's second argument.

### C. The ALJ properly treated the opinion evidence of Dr. Emery.

Plaintiff asserts that the ALJ committed reversible error by improperly affording only "some weight" to the state agency examining psychologist Dr. Emery's medical opinion when assessing Plaintiff's RFC. *Doc. 25* at 12-16; *doc. 28* at 4-5. For the following reasons, the Court should find that the ALJ properly considered Dr. Emery's opinion evidence.

In determining a claimant's RFC, an ALJ "is required to consider all of the claimant's medically determinable impairments, singly and in combination." *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). While an ALJ "need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative." *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (quotations omitted).

Specifically, to determine what weight to give to a medical opinion, the ALJ must consider the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)(2)-(6)); *see also Kilpatrick v. Astrue*, 502 F. App'x 801, 806 (10th Cir. 2012) (unpublished).

In the case at bar, the ALJ properly based her reasons for only assigning "some weight" to Dr. Emery's opinion on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.3d at 800. First, the ALJ noted that Dr. Emery's opinion that Plaintiff had marked social limitations was inconsistent with examination notes throughout the medical record. AR at 24. For example, the ALJ underscored that, throughout the record, Plaintiff is described as "cooperative," "with an appropriate mood and affect." *Id*. Second, the ALJ explained that Dr. Emery's conclusion that Plaintiff is markedly limited in social functioning is additionally inconsistent with Plaintiff's daily activities, which reveal that Plaintiff has an active social life. *Id*. For example, the ALJ noted that Plaintiff testified during the hearing that he spends a lot of time with his friends, watching games, enjoying the outdoors and the mountains, and hosting those friends at his home every other weekend. AR at 23, 24. The ALJ, in so noting, demonstrated that she had a foundation for believing that such activities are at odds with a finding that Plaintiff suffers from marked social limitations. Third, the ALJ concluded that Dr. Emery's finding that Plaintiff suffered from markedly limited cognitive skills was inconsistent with Dr. Emery's own treatment notes. AR at 24. For example, the ALJ noted that Dr. Emery

15

had determined that Plaintiff was capable of handling his own finances independently, an ability that requires a certain level of cognitive functioning that arguably surpasses abilities held by those with marked cognitive limitations. *Id.* These three reasons constitute substantial evidence justifying the ALJ's decision to assign only "some weight" to Dr. Emery's opinion.

Although a *de novo* reviewer might make a different determination when looking at the same evidence, this is not the applicable standard of review. Instead, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084. Because the ALJ supported her finding with substantial evidence and comported with proper legal standards in doing so, the Court should find that her assignment of only "some weight" to Dr. Emery's opinion was proper. Consequently, the Court should reject Plaintiff's third argument.

### D. The ALJ comported with proper legal standards when performing step five of her disability analysis.

Plaintiff next contends that the ALJ erred in step five of her disability analysis by limiting Plaintiff to Specific Vocational Preparation ("SVP") 2 jobs, and for failing to "clarify" the VE's testimony. For the following reasons, I recommend that the Court reject Plaintiff's argument.

The SVP is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average

16

performance in a specific job-worker situation." Dictionary of Occupational Titles, App'x C (II), Components of the Definition Trailer, 1991 WL 688702. An SVP of 2 indicates that a typical worker will need up to a month to learn how to do a particular job. *Id*. Plaintiff argues that the ALJ committed error by only limiting Plaintiff to an SVP of 2 in her hypothetical posed to the VE, asserting that this SVP did not properly accommodate Dr. Emery's assessment that Plaintiff was moderately to markedly limited in his ability to adapt. *Doc. 25* at 16-17; *doc. 28* at 5. However, the ALJ properly assigned only some weight to Dr. Emery's opinion, as demonstrated above. As such, she was not obligated to incorporate into her hypothetical a limitation that she did not find to be supported by the evidence of record. Rather, the hypothetical that she related to the VE properly matched the limitations later reflected in her RFC assessment. *See Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000) (rejecting a plaintiff's challenge to the ALJ's hypothetical question to the VE where it merely reiterated the plaintiff's same challenge to the RFC determination already upheld by the court). Because the ALJ reasonably created a hypothetical that included all the limitations that she ultimately included in Plaintiff's RFC, it was proper for her to rely on the VE's answer to that hypothetical as a basis for her disability decision. *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993)).

Further, contrary to Plaintiff's assertion, the ALJ was not required to ask subsequent questions or "clarify" the VE's testimony. The ALJ specifically reminded

the VE, "if you give us an opinion which conflicts with the information in the DOT . . . you need to advise us of the conflict and the basis for your opinion." AR at 65. The VE confirmed that she would abide by this duty. *Id*. As a result, the ALJ could properly rely on the VE's confirmation that her testimony was consistent with the DOT. *See Thompson v. Colvin*, 551 F. App'x 944, 949 (10th Cir. 2014) (unpublished) (no duty to resolve conflict where "the VE testified that the jobs he identified were consistent with a hypothetical person with [the claimant's] impairments and the DOT"). Therefore, the ALJ comported with proper legal standards during her step five disability analysis and was not required to do anything further. Thus, the Court should reject Plaintiff's argument on this point.

## VI. CONCLUSION

For the foregoing reasons, I recommend finding that Plaintiff has failed to demonstrate that the ALJ committed reversible error. Therefore, I recommend that Plaintiff's Motion to Reverse and Remand (*doc. 25*) be DENIED and the Commissioner's decision be AFFIRMED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**