# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

FRANK ANTHONY BERNAL,

    Plaintiff,

v.                                                                             Civ. No. 16-1365 JAP/GBW

NANCY BERRYHILL, Acting
Commissioner of the Social
Security Administration,

    Defendant.

## CLARIFICATION OF PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before me on the Court's Order Recommitting to Magistrate Judge for Further Clarification of its Proposed Findings and Recommended Disposition. *Doc. 33.* In its Order, the Court recommits to me the Proposed Findings and Recommended Disposition ("PFRD"), in part, to clarify three issues. First, the Court asks whether it was harmless error for the Administrative Law Judge ("ALJ") to fail to address Listing ¶ 12.02, Organic Mental Disorder, when in order to meet the Listing ¶ 12.02 criteria, a plaintiff must establish either Paragraph A and Paragraph B or alternatively Paragraph C, and the ALJ made no findings about whether Plaintiff met the definition of ¶ 12.02 or the criteria found in Paragraph C. *Id.* at 2. Second, the Court inquires whether the PFRD made a finding that a "wide range of issues [could]

1

precipitate 'special education'" based on evidence in the record. *Id.* Third, the Court seeks to clarify whether the fact that a consulting physician's report should be properly characterized as "clinical findings" instead of "treatment notes" changes the analysis regarding whether the ALJ gave proper weight to the report. *Id.* I will address each of these issues in turn.

### A. The ALJ's failure to address Listing ¶ 12.02 and its potential applicability to Plaintiff does not constitute reversible error.

The Court first asks whether it was harmless error for the ALJ to fail to address Listing ¶ 12.02, Organic Mental Disorder, when to meet the Listing ¶ 12.02 criteria, a plaintiff must meet either Paragraph A and Paragraph B or, alternatively, Paragraph C, and the ALJ made no findings about whether Plaintiff met the definition of ¶ 12.02 or the criteria found in Paragraph C. *Id.* at 2.

To begin, the ALJ was not required to consider Listing ¶ 12.02, because the ALJ should "'be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored,' and the ALJ 'may ordinarily require counsel to identify the issue or issues requiring further development.'" *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997)). Plaintiff was represented by counsel in the proceedings before the ALJ, and counsel did not raise Listing ¶ 12.02 as a basis for a finding of disability before the ALJ. *See generally* AR at 34-70. Instead, counsel proposed only Listing ¶ 12.05C as a listing that Plaintiff's impairments might

2

meet or medically equal. AR at 42-43. It is not the ALJ's responsibility to adopt counsel's role by crafting counsel's arguments for them. *See Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) ("the ALJ is not required to act as the claimant's advocate [.]"). Plaintiff had the burden at step three to present evidence that established that his impairments met or medically equaled the listing. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). His counsel did not so much as mention Listing ¶ 12.02. As such, the ALJ committed no error by failing to analyze the applicability of Listing ¶ 12.02 in her opinion.

However, even if the ALJ were required to consider the applicability of Listing ¶ 12.02, her failure to do so constitutes harmless error, because Plaintiff could not have met the requirements of Listing ¶ 12.02 in light of the ALJ's analysis regarding the applicability of Listings ¶¶ 12.04, 12.05, and 12.06. To clarify, Listing ¶ 12.02 defines qualifying organic mental disorders as "[p]sychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and **loss of previously acquired functional abilities**." 20 CFR Pt. 404, Subpt. P, App. 1 § 12.02 (Aug. 12, 2015) (emphasis added). A plaintiff will be found to have the required level of severity for the listed

impairment "when the requirements in both A and B are satisfied, or when the requirements in C are satisfied." *Id.*[1]

A claimant may first attempt to meet the definition by attempting to meet both Paragraph A and Paragraph B. Pertinent here, under Paragraph B, a claimant must show that the criteria met under Paragraph A[2] have resulted in at least two of the following: (1) marked restriction in activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Id.* § 12.02B. These criteria are identical to the Paragraph B criteria of Listings

---

[1] Notably, the regulations governing what must be proven to meet Listing ¶ 12.02 are internally inconsistent. 20 CFR Pt. 404, Subpt. P, App. 1 § 12.00 (Aug. 12, 2015), describing mental disorders generally, states:

> There are additional functional criteria (paragraph C criteria) in 12.02. . . . We will assess the paragraph B criteria before we apply the paragraph C criteria. We will assess the paragraph C criteria only if we find that the paragraph B criteria are not satisfied. We will find that you have a listed impairment if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied.

This section appears to indicate that, in order to meet the listing of any mental disorder, Plaintiff must meet the definition and Paragraph A and Paragraph B, or Paragraph A and Paragraph C in the alternative. This is also expressed in POMS DI34001.032, which states, "Listing[] 12.02 [has] three paragraphs, designated A, B, and C; your mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C." POMS DI34001.032. These directives are plainly at odds with the requirements contained in Listing 12.02 itself. However, because Plaintiff fails to meet Listing ¶ 12.02 even if he is only required to meet Paragraph C, I will not further address this apparent inconsistency.

[2] Although not dispositive here, under Paragraph A, a claimant must first demonstrate that he suffers from "a loss of specific cognitive abilities or affective changes." 20 CFR Pt. 404, Subpt. P, App. 1 § 12.02A. Paragraph A also requires the medically documented persistence of at least one of the following: (1) disorientation to time and place; (2) memory impairment; (3) perceptual or thinking disturbances; (4) change in personality; (5) disturbance in mood; (6) emotional lability and impulse control impairment; or (7) loss of measured intellectual ability of at least 15 IQ points from premorbid levels or overall impairment index clearly within the severely impaired range. *Id.*

¶¶12.04 and 12.06, and to the Paragraph D criteria of Listing ¶ 12.05.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.02B, 12.04B, 12.05D, 12.06B.  As expressed in my PFRD, the ALJ explicitly ruled out the applicability of Listings ¶¶ 12.04, 12.05, and 12.06, thereby ruling out Paragraph B of § 12.02.  *See* AR at 17-18; *see also doc. 30* at 13.   The ALJ thoroughly discussed the evidence of record pertaining to these criteria, and ultimately concluded that "[b]ecause [Plaintiff's] mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria [of Listings ¶¶ 12.04 and 12.06] ('paragraph D' criteria of listing ¶ 12.05) are not satisfied."  AR at 18.  As such, had the ALJ analyzed the applicability of Listing ¶ 12.02, under Paragraphs A and B, she would have similarly concluded that Plaintiff's impairment did not meet or medically equal that listing.

Next, assuming Plaintiff's impairment could meet the listing requirements of ¶ 12.02 by meeting Paragraph C alone, Plaintiff's argument that the ALJ erred by not discussing that paragraph similarly fails.  Paragraph C requires the following:

> Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

5

> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 CFR Pt. 404, Subpt. P, App. 1 § 12.02.

First, even assuming that Plaintiff has provided sufficient evidence to make a finding that Plaintiff meets part one of Paragraph C—i.e., that Plaintiff suffers from a chronic organic mental disorder of at least 2 years' duration causing more than a minimal limitation of ability to do basic work activities—the ALJ's opinion found that Plaintiff does not meet part two of Paragraph C, which requires him to meet one of the three subsections. Specifically, the ALJ did consider whether Plaintiff met any of these subsections in her opinion: "[t]here is no evidence in the medical record that the claimant suffers from: (1) repeated episodes of decompensation; (2) an inability to function outside of a highly supportive living arrangement; or (3) a residual disease process that results in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the claimant to decompensate." AR at 18. As a result, the ALJ determined that Plaintiff did not meet Paragraph C of Listing ¶ 12.02. Therefore, because Plaintiff fails to meet Paragraph A, Paragraph B, or Paragraph C, the ALJ's failure to explicitly consider Listing ¶ 12.02 in her opinion constitutes harmless error.

## B. The PFRD did not make a finding that a "wide range of issues [could] precipitate 'special education.'"

In the PFRD, I recommended that the Court hold that the ALJ properly found that Plaintiff's impairment did not meet or medically equal Listing 12.05C at step three of her disability analysis. Particularly, in making her finding the ALJ stated:

> [T]he "paragraph C" criteria of listing 12.05 are not met. To meet listing 12.05C, the evidence must demonstrate that: (1) the claimant had a valid, verbal, performance, or full-scale IQ score of 60 through 70 with a physical or other mental impairment imposing an additional and significant work-related limitation of function and (2) the claimant has sub-average general intellectual functioning with deficits in adaptive functioning that initially manifested . . . before age 22. I acknowledge that the claimant's verbal IQ score was measured to be a 70 on the November 2014 test [when] the claimant was forty-six years old. The record does not include any evidence of the claimant's IQ score before attaining the age of twenty-two. The claimant indicates that he was placed in special education classes, but there are no educational records to support this claim. Furthermore, the claimant indicates that he injured his head in a car accident approximately fifteen years prior to this claim. Dr. Emery noted that [it] "is not possible to sort out whether this is native intelligence . . . or a result of the head injury or both. In addition, the record indicates that the claimant has used recreational drugs and cocaine. The record does not include any evidence regarding whether the drug use has had any effect on the claimant's IQ. Therefore, I find that the claimant does not meet the "paragraph C" criteria for 12.05.

AR at 23.

Overall, the ALJ went far beyond the substantial evidence standard in justifying her finding that Plaintiff did not meet or medically equal Listing ¶ 12.05C. My reference to the "wide range of issues" that could precipitate special education merely sought to reiterate the ALJ's point that participation in special education classes by

Plaintiff did not prove that Plaintiff's IQ was at a particular level prior to age 22. Moreover, the ALJ explained why she found that Plaintiff's testimony regarding his special education classes was outweighed by other record evidence that his IQ was likely affected by his traumatic brain injury and drug abuse later in life. Consequently, even if Plaintiff had provided further evidence of his participation in special education, the ALJ's finding should stand, because "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

In other words, when discussing the ALJ's analysis of the applicability of Listing ¶ 12.05C, my statement regarding the strength of the special education evidence was not fundamental to my recommendation, and was not made to bolster the ALJ's finding or provide post hoc rationale. This statement also does not reflect a factual finding that I made, or recommended the Court make, based on evidence in the record.

### C. The fact that Dr. Emery's report is more properly characterized as "clinical findings" instead of "treatment notes" does not alter the analysis of the ALJ's treatment of Dr. Emery's opinion.

On one occasion in the analysis of the ALJ's assessment of Dr. Emery, the PFRD referred to "Dr. Emery's own treatment notes." *Doc. 30* at 15. As noted in Plaintiff's objections, Dr. Emery's notes would be more precisely be called "clinical findings" since Dr. Emery was a consulting, rather than treating, doctor. *See doc. 31* at 7. Notwithstanding this semantic imprecision, my analysis of the weight given to Dr.

Emery's opinion by the ALJ was proper. In the PFRD, I explained that, to determine what weight to give to an opinion from a "medical source," the ALJ must consider the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Doc. 30* at 14-15 (quoting *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)(2)-(6)). These factors are the same whether the medical opinion comes from a treating or consulting physician.[3] Moreover, it is apparent from the PFRD that I was aware that Dr. Emery was a consulting, not treating, doctor. *See doc. 30* at 14 ("Plaintiff asserts that the ALJ committed reversible error by improperly affording only 'some weight' to the state agency examining psychologist Dr. Emery's medical opinion when assessing Plaintiff's RFC."). Finally, if anything, Dr. Emery's status as a consulting, rather than treating doctor, would weaken Plaintiff's claim that the ALJ erred in giving his opinion only "some weight" because the opinions of physicians who have seen a claimant over a period of time for purposes

---

[3] "Medical sources" are defined in 20 CFR 404.1502 and 416.902 as "treating sources," "sources of record" (i.e., medical sources that have provided an individual with medical treatment or evaluation, but do not have or did not have an ongoing treatment relationship with the individual), and "consultative examiners" for the Social Security Administration.

9

of treatment are generally given more weight than the views of consulting physicians. *See Williams v. Bowen*, 844 F.2d 748, 757 (10th Cir. 1988); *Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987). In short, the imprecise reference to Dr. Emery's "treatment notes" does not undermine my analysis or recommendation regarding the ALJ's assessment of Dr. Emery's opinion.

_____
GREGORY B. WORMUTH
United States Magistrate Judge